UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| INLAND BANK AND TRUST, | ) | |
| | ) | |
| Plaintiff, | ) | 17 C 604 |
| | ) | |
| vs. | ) | Judge Gary Feinerman |
| | ) | |
| ORACLE FLEXIBLE PACKAGING, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**M**EMORANDUM **O**PINION AND **O**RDER

Inland Bank and Trust ("IBT") brought this diversity suit to collect $709,146.58 in allegedly unpaid invoices from Oracle Flexible Packaging, Inc. Doc. 20. Oracle has moved to dismiss the suit for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). Doc. 22. The motion is denied.

**Background**

In resolving a Rule 12(b)(2) motion, the court considers the complaint's well-pleaded allegations and the evidentiary materials submitted by both sides. No party has requested an evidentiary hearing, so the court must accept IBT's factual averments and resolve all factual disputes in its favor. *See Felland v. Clifton*, 682 F.3d 665, 672 (7th Cir. 2012) ("[W]here, as here, the issue of [personal jurisdiction] is raised on a motion to dismiss, the plaintiff need only make a prima facie showing of jurisdictional facts. We therefore accept as true all well-pleaded facts alleged in the complaint and resolve any factual disputes … in favor of the plaintiff.") (citation omitted); *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782-83 (7th Cir. 2003). The court must also consider "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper

1

judicial notice," along with additional facts set forth in IBT's brief opposing dismissal, "so long as those facts are consistent with the pleadings." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1020 (7th Cir. 2013) (internal quotation marks omitted). The facts are set forth as favorably to IBT as those materials allow. *See Meade v. Moraine Valley Cmty. Coll.*, 770 F.3d 680, 682 (7th Cir. 2014). At this stage of the proceeding, the court does not vouch for their accuracy. *See Jay E. Hayden Found. v. First Neighbor Bank, N.A.*, 610 F.3d 382, 384 (7th Cir. 2010).

Oracle is a flexible packaging laminate manufacturer. Doc. 20 at ¶ 8. Oracle's former subsidiary, Alpha Aluminum LLC, is an aluminum foil and coiled sheet manufacturer. *Id*. at ¶ 7; Doc. 32 at 1. Oracle and Alpha have their principal offices in North Carolina. Doc. 32-1 at 8. In 2014, Oracle retained Vincent J. Pappalardo of the financial advisory firm Stout Risius and Ross, Inc. ("SRR") to find a buyer for Alpha. Doc. 32-1 at 2-3. Pappalardo is based in SRR's Chicago office, *id*. at 3, and Oracle's contract with SRR lists only SRR's Chicago address, Doc. 33-1 at 7.

Pappalardo targeted AluminumSource, LLC as a potential buyer for Alpha. Doc. 32-1 at 3. Robert Gamba, AluminumSource's founder, and Joshua Hoyt, a 40% owner of AluminumSource and 100% owner of Metallic Conversion Corporation (whose role is described below), negotiated with Pappalardo for approximately eight months regarding the sale. Doc. 32 at 2; Doc. 32-1 at 2-4. Gamba represented AluminumSource; Hoyt represented AluminumSource and Metallic; and Pappalardo represented Oracle. Doc. 32-1 at 4. Their discussions were carried out primarily by telephone and email, with most of Hoyt and Pappalardo's communications made from and received in Illinois. *Ibid*. In-person meetings occurred in Illinois as well. *Ibid*. Hoyt is an Illinois resident, Doc. 32 at 7, and Metallic is

located in Illinois, Doc. 32-1 at 2. Gamba is a Wisconsin resident, Doc. 33 at 2 & n.1, and AluminumSource is located in Wisconsin, *id*. at 2.

The negotiations resulted in a complex transaction formalized in two contracts: the Membership Unit Purchase Agreement ("MUPA"), Doc. 33-1 at 29-38, and the Product Supply Agreement ("PSA"), Doc. 32-1 at 8-20. Both contracts were dated August 11, 2015. Doc. 32-1 at 8; Doc. 33-1 at 29. The parties to the MUPA were Oracle and AluminumSource, Doc. 33-1 at 29, and the parties to the PSA were Oracle, Alpha, and Metallic, Doc. 32-1 at 8. Hoyt executed the PSA in Illinois on behalf of Metallic and Alpha, and Jonathan Heard executed the PSA in North Carolina on behalf of Oracle. *Id*. at 5, 18-20. Oracle transmitted its signed copy to Illinois, where the signature pages were aggregated to create a fully executed PSA. *Id*. at 5. Heard executed the MUPA (presumably in North Carolina) on behalf of Oracle, and Hoyt executed the MUPA (presumably in Illinois) on behalf of AluminumSource. Doc. 33-1 at 37-38.

The MUPA memorialized the terms of Oracle's sale of Alpha to AluminumSource, Doc. 33-1 at 34, and the PSA memorialized Oracle's agreement to purchase aluminum products manufactured by Alpha following the sale of Alpha, Doc. 32-1 at 8-9. Specifically, the PSA provided that Oracle would purchase certain metal products from Alpha and that Alpha would have the right to assign, transfer, or delegate its obligations under any purchase order to Metallic. *Id*. at 9; Doc. 20 at ¶¶ 13-14; *see also* Doc. 32-1 at 3 (Hoyt's averment that the PSA's purposes were to "ensure that a) Alpha had a steady source of business once it was spun off from Oracle, and b) Oracle had an ongoing supply of aluminum coil as it evaluated its supply chain"). Metallic's role in the PSA was necessary to comply with restrictions imposed by AluminumSource's loan provider. Doc. 32-1 at 3-4.

As permitted by and pursuant to the PSA, Alpha assigned, delegated, or transferred to Metallic some of Oracle's purchase orders, meaning that Metallic filled the orders and billed Oracle accordingly. Doc. 20 at ¶¶ 25-26. Oracle timely paid most of Metallic's invoices, but it (allegedly) refused to pay $709,146.58. *Id*. at ¶¶ 27-28. Metallic assigned the right to collect those (allegedly) unpaid invoices to IBT, an Illinois state chartered banking institution with its principal place of business in Illinois. *Id*. at ¶¶ 1-2. IBT brought this collections action, and Oracle has moved to dismiss on the ground that it is not subject to personal jurisdiction in Illinois. Doc. 22.

## Discussion

"District courts exercising diversity jurisdiction apply the personal jurisdiction rules of the state in which they are located." *Philos Techs., Inc. v. Philos & D, Inc.*, 802 F.3d 905, 912 (7th Cir. 2015). The Illinois long-arm statute allows for the exercise of "jurisdiction to the limit set by the Due Process Clauses of the Constitution." *Noboa v. Barcelo Corporacion Empresarial, SA*, 812 F.3d 571, 572 (7th Cir. 2016); *see also* 735 ILCS 5/2-209(c) ("A court may … exercise jurisdiction on any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States."). Thus, a federal court sitting in Illinois and evaluating a Rule 12(b)(2) motion asks "whether the exercise of personal jurisdiction would violate federal due process." *Mobile Anesthesiologists Chi., LLC v. Anesthesia Assocs. of Hous. Metroplex, P.A.*, 623 F.3d 440, 443 (7th Cir. 2010); *see also N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 492 (7th Cir. 2014) ("[T]he statutory question merges with the constitutional one—if Illinois constitutionally may exercise personal jurisdiction over a defendant, its long-arm statute will enable it to do so.").

"Personal jurisdiction can be general or specific, depending on the extent of the defendant's contacts." *Mobile Anesthesiologists*, 623 F.3d at 444; *see also Daimler AG v. Bauman*, 134 S. Ct. 746, 754-55 (2014). IBT pursues only a specific jurisdiction theory. Doc. 32 at 5. "The inquiry whether a forum state may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014). as the Seventh Circuit has explained:

> There are various formulations of the standard for establishing specific personal jurisdiction, but they may be condensed to three essential requirements: (1) the defendant must have purposefully availed [itself] of the privilege of conducting business in the forum state or purposefully directed [its] activities at the state; (2) the alleged injury must have arisen from the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with traditional notions of fair play and substantial justice.

*Felland*, 682 F.3d at 673 (citations omitted); *see also Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*, 137 S. Ct. 1773, 1781 (2017) ("In order for a court to exercise specific jurisdiction over a claim, there must be an affiliation between the forum and the underlying controversy, principally an activity or an occurrence that takes place in the forum State.") (internal quotation marks and brackets omitted); *Philos*, 802 F.3d at 912-13; *N. Grain Mktg.*, 743 F.3d at 492. Oracle argues only that the first requirement is not satisfied—that it did not purposefully direct its activities at Illinois or purposefully avail itself of the privilege of conducting business in Illinois. Doc. 23 at 6-10; Doc. 32 at 15; Doc. 33 at 4-10. Any argument directed at the second or third requirement is therefore forfeited. *See G&S Holdings LLC v. Cont'l Cas. Co.*, 697 F.3d 534, 538 (7th Cir. 2012) ("We have repeatedly held that a party waives an argument by failing to make it before the district court. That is true whether it is an affirmative argument in support of a motion to dismiss or an argument establishing that dismissal is inappropriate.") (citations omitted); *Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011) ("We apply [the forfeiture] rule where a party fails to develop arguments related to a discrete issue … .").

5

"District courts ruling on Rule 12(b)(2) motions … must perform a flexible, all-things-considered inquiry into whether the defendant has purposely availed itself of the forum State's laws such that it would be fair to subject it to suit there." *Riverdale Plating & Heat Treating, LLC v. Andre Corp.*, 2015 WL 5921896, at *3 (N.D. Ill. Oct. 9, 2015) (internal quotation marks omitted). In contract cases, courts structure that inquiry by "us[ing] a multi-factor test for determining whether personal jurisdiction exists … . They consider: (1) who initiated the transaction; (2) where the contract was negotiated; (3) where the contract was formed; and (4) where performance of the contract was to take place." *Philos*, 802 F.3d at 913 (internal quotation marks omitted); *see also Estate of Isringhausen ex rel. Isringhausen v. Prime Contractors & Assocs.*, 883 N.E.2d 594, 601 (Ill. App. 2008). The parties agree that those four factors should be applied here. Doc. 23 at 7; Doc. 32 at 6.

As to the first factor: Oracle initiated the transaction through an Illinois agent. Oracle hired Pappalardo, of SRR's Chicago office, to identify a buyer for Alpha and to represent Oracle in the ensuing MUPA and PSA negotiations. Doc. 32-1 at 2-4. As Oracle's agent, Pappalardo identified AluminumSource as a potential buyer, which was represented by Gamba and Hoyt, who primarily were located in Wisconsin and Illinois, respectively. *Id.* at 3-4; Doc. 33 at 2 & n.1; *see Fletcher v. Doig*, 125 F. Supp. 3d 697, 706 (N.D. Ill. 2014) ("[T]he acts of an agent may be considered to be the acts of the principal in determining the principal's contacts with Illinois.") (internal quotation marks omitted). The record does not specify precisely when Hoyt's other company, Metallic, officially became a party to the negotiations. But that hardly matters, given that Hoyt—Metallic's sole owner—was involved in the negotiations from the start on AluminumSource's behalf. Doc. 32-1 at 3; *see Philos*, 802 F.3d at 913 ("[W]e find it more helpful to keep in mind the fluidity of the relationships among P & D, Philos Tech, and PLST (as

6

well as the various people who controlled these companies), rather than to focus narrowly on the precise legal structures they chose."). Whether Metallic was brought into the transaction directly by AluminumSource or by Oracle is of little consequence as well, since the entire transaction was one that Oracle initiated. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) ("Jurisdiction is proper … where the contacts proximately result from actions by the defendant himself that create a substantial connection with the forum State.") (internal quotation marks and emphasis omitted); *Riverdale Plating*, 2015 WL 5921896, at *3 (reasoning that a court need not "give dispositive effect to the parties' first interaction while ignoring their second through hundred-and-second"). In initiating the transaction, then, Oracle "deliberately established" significant contacts with Illinois by engaging an Illinois agent (Pappalardo), who negotiated a deal on Oracle's behalf with parties that included an Illinois company (Metallic) represented by an Illinois resident (Hoyt). *Philos*, 802 F.3d at 913.

Oracle resists this conclusion by asserting that any circumstances surrounding the MUPA are irrelevant to the jurisdictional analysis. Doc. 33 at 4. That argument rests on the faulty premise that the circumstances surrounding the MUPA are distinct from those surrounding the PSA. The MUPA and the PSA were negotiated together by the same group of individuals during the same time period in order to achieve the same objective, which was to smoothly transfer ownership of Alpha from Oracle to AluminumSource. Doc. 32-1 at 3-4. Accordingly, the "transaction" at issue necessarily encompasses *both* of those contracts. Oracle's counsel acknowledged as much during the oral argument, stating that the MUPA and the PSA "are part of the same transaction" and that "Oracle did initiate the overall transaction." The PSA expressly reflects that understanding, providing that it

> is being entered into in connection with that certain Membership Unit Pricing Agreement [MUPA], dated of even date herewith, by and among

7

> AluminumSource LLC, the Seller and the Buyer (the "Definitive Agreement") and the validity of this Agreement is specifically contingent upon the closing of the transactions contemplated by the Definitive Agreement.

Doc. 32-1 at 8. The court therefore declines to erect an artificial barrier in what is otherwise an integrated story involving two inextricably intertwined contracts.

As to the second factor: the contract was negotiated partially in Illinois. The principal negotiators of the PSA were Pappalardo, Gamba, and Hoyt. Doc. 32-1 at 4. Hoyt averred that he and Pappalardo "exchanged dozens of emails and phone calls," most of which were made from and received in Illinois, and "participated in several meetings … to discuss and negotiate issues related to the transactions" in Illinois. *Ibid.*; *see Walden*, 134 S. Ct. at 1122 ("[P]hysical entry into the State—either by the defendant in person or through an agent, goods, mail, or some other means—is certainly a relevant contact."); *Wis. Elec. Mfg. Co. v. Pennant Prods., Inc.*, 619 F.2d 676, 677 (7th Cir. 1980) (holding that personal jurisdiction in Wisconsin was proper because "[t]he significant contacts of the out-of-state buyer with the forum state that are present here … are visits by the buyers' agents to Wisconsin in connection with the business on which the claim is based"); *cf. Mid-Am. Tablewares, Inc. v. Mogi Trading Co., Ltd.*, 100 F.3d 1353, 1360 (7th Cir. 1996) (affirming the existence of personal jurisdiction in Wisconsin in part because the defendant "directed a number of faxes to Hemmerich in Wisconsin" during the parties' "period of initial discussions"). Gamba was the only main negotiator not based in Illinois, and the record does not establish whether he traveled to Illinois to meet with Pappalardo and Hoyt. Regardless, the contract was negotiated on all sides by at least one Illinois representative: Pappalardo on behalf of Oracle and Hoyt on behalf of Metallic, AluminumSource and Alpha. Doc. 32-1 at 4. (Hoyt negotiated on Alpha's behalf only as to the PSA, which, as noted, governed product sales to occur after Oracle sold Alpha to AluminumSource.)

8

As to the third factor: the contract was formed partially in Illinois. Hoyt signed the PSA in Illinois on behalf of Metallic and Alpha, and Heard signed it in North Carolina. *Id.* at 5. Oracle's signature page was then sent from North Carolina to Illinois to be combined with the other signature pages in Illinois. *Ibid.* The fully executed PSA was thereby created in Illinois and circulated to the parties from Illinois. *Ibid.*; *see N. Grain Mktg.*, 743 F.3d at 493 (observing that "mailing a copy of the contract" to the forum state is a factor weighing in favor of personal jurisdiction).

As to the fourth factor: the performance of the contract was to take place partially in Illinois. While most aspects of performance were to occur in North Carolina—including the manufacture, shipping, and delivery of the goods—Metallic's role was to take place in Illinois. Doc. 32-1 at 4-6; *see N. Grain Mktg.*, 743 F.3d at 493 (noting that the Seventh Circuit has treated the defendant's knowledge that the plaintiff would complete most of its performance obligations in the forum state as a factor weighing in favor of personal jurisdiction). Granted, Metallic's role was primarily administrative—"accept[ing] purchase order assignments from Alpha, fill[ing] those orders, conferr[ing] with Oracle regarding issues with the orders, coordinat[ing] with Oracle to arrange for delivery, and issu[ing] invoices for the filled orders" from Illinois, Doc. 32 at 10—but that role did require Oracle to direct communications and send payment to Illinois. Doc. 32-1 at 5-6. This lawsuit stems from Oracle's alleged failure to fulfill its "continuing obligations" to undertake those Illinois-directed activities by sending payment to Metallic, which supports the exercise of personal jurisdiction here. *See Burger King*, 471 U.S. at 475-76 ([W]here the defendant … has created continuing obligations between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting business there, and … it is presumptively not unreasonable to require him to submit to the burdens of litigation in

9

that forum as well.") (internal quotation marks and citations omitted); *N. Grain Mktg.*, 743 F.3d at 495 (observing that "contracts with continuing obligations to the forum state" are more likely to give rise to personal jurisdiction); *Citadel Grp. Ltd. v. Wash. Reg'l Med. Ctr.*, 536 F.3d 757, 764 (7th Cir. 2008) ("The Due Process Clause may not readily be wielded as a territorial shield to avoid interstate obligations that have been voluntarily assumed.") (brackets omitted).

Consideration of the governing factors yields the conclusion that Oracle's "amenability to jurisdiction is not based on random, fortuitous, or attenuated contacts, but on contacts that demonstrate a real relationship with [Illinois] with respect to the transaction at issue." *N. Grain Mktg.*, 743 F.3d at 493 (internal quotation marks and citation omitted). The outcome would be the same without the structure of the four-factor test. Oracle intentionally established contacts with Illinois when it: hired an Illinois agent for purposes of initiating and negotiating this transaction, Doc. 32-1 at 2-3; negotiated with Hoyt and Metallic, both based in Illinois, *id*. at 2, 4; participated in in-person meetings in Illinois, *id*. at 4; directed phone calls and emails to Illinois and from Illinois, *ibid*.; and sent its signature page to Illinois for the contract to be aggregated, *id*. at 5. At all relevant times, Oracle was keenly aware that Metallic was an Illinois corporation located in Illinois and that it would fulfill its contractual obligations from Illinois. *Id*. at 4; *see also* Doc. 32-1 at 8 (stating, in the first paragraph of the PSA, that Metallic is "an Illinois corporation, with its principal offices … [in] Highland Park, IL"). While any one of those factors might not be sufficient to support personal jurisdiction in Illinois, the result of this totality-of-the-circumstances inquiry is clear: Oracle "purposefully availed [itself] of the privilege of conducting business" in Illinois and "purposefully directed [its] activities" at Illinois. *Felland*, 682 F.3d at 673. The court therefore has personal jurisdiction over Oracle. *See Burger King*, 471 U.S. at 473 ("[P]arties who reach out beyond one state and create continuing

relationships and obligations with citizens of another state are subject to regulation and sanctions in the other State for the consequences of their activities.") (internal quotation marks omitted); *Heritage House Rests., Inc. v. Cont'l Funding Grp., Inc.*, 906 F.2d 276, 284 (7th Cir. 1990) ("Because Continental knowingly has reached out to that corporation and created a continuing relationship or obligation, it is subject to the jurisdiction of Illinois courts.").

## Conclusion

Oracle's motion to dismiss for want of personal jurisdiction is denied. It shall answer the complaint by August 30, 2017.

August 15, 2017

United States District Judge