UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| INLAND BANK AND TRUST, | ) | |
| | ) | |
| Plaintiff, | ) | 17 C 604 |
| | ) | |
| vs. | ) | Judge Gary Feinerman |
| | ) | |
| ORACLE FLEXIBLE PACKAGING, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Inland Bank and Trust ("IBT") brought this diversity suit to collect about $700,000 in unpaid invoices allegedly owed by Oracle Flexible Packaging, Inc. Doc. 20. The court denied Oracle's motion to dismiss under Rule 12(b)(2) for lack of personal jurisdiction. Docs. 39-40 (reported at 2017 WL 3521166 (N.D. Ill. Aug. 15, 2017)). Oracle then answered and asserted a set-off affirmative defense. Doc. 44. IBT has moved under Rule 12(c) for judgment on the pleadings as to the set-off defense. Doc. 54. The motion is denied.

**Background**

According to Oracle, IBT's motion is properly framed as a Rule 12(f) motion to strike rather than a Rule 12(c) motion for judgment on the pleadings. Doc. 62 at 4. Oracle is correct, but the distinction makes no difference. In resolving a Rule 12(f) motion to strike an affirmative defense, as in resolving a Rule 12(c) or Rule 12(b)(6) motion, the court assumes the truth of the affirmative defense's factual allegations, though not its legal conclusions, and draws all reasonable inferences in Oracle's favor. *See United States v. 416.81 Acres of Land*, 514 F.2d 627, 631 (7th Cir. 1975) (Clark, J.); *Adams v. City of Indianapolis*, 742 F.3d 720, 727-28 (7th Cir. 2014). The court must also consider "documents attached to the [pleadings], documents that

1

are critical to the [pleadings] and referred to in [them], and information that is subject to proper judicial notice," along with additional facts set forth in Oracle's opposition brief, so long as those facts "are consistent with the pleadings." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1020 (7th Cir. 2013) (internal quotation marks omitted). As required on a Rule 12(f) motion, the facts are set forth as favorably to Oracle as those materials allow. *See Meade v. Moraine Valley Cmty. Coll.*, 770 F.3d 680, 682 (7th Cir. 2014). In setting forth those facts, the court does not vouch for their accuracy. *See Jay E. Hayden Found. v. First Neighbor Bank, N.A.*, 610 F.3d 382, 384 (7th Cir. 2010).

Oracle is a flexible packaging laminate manufacturer. Doc. 20 at ¶ 8. Its former subsidiary, Alpha Aluminum LLC, was an aluminum foil and coiled sheet manufacturer. *Id*. at ¶ 7. In August 2015, Oracle sold Alpha to AluminumSource, LLC. Doc. 32-1 at ¶¶ 1-14. The sale was memorialized in the Membership Unit Purchase Agreement ("MUPA"). Doc. 62-1. That same day, Oracle entered into five contracts governing its post-sale relationship with Alpha.

One such contract, the Product Supply Agreement ("PSA"), provided that Alpha would supply Oracle with certain quantities of metal products for nine months following the sale. Doc. 20-2. Alpha reserved the right to assign its obligations under any purchase order made under the PSA to Metallic Conversion Corporation. *Id*. at ¶ 2(b). Another contract, called the "August 11, 2015 Purchase Order," required Metallic to purchase $1,250,000 worth of goods from Oracle. Doc. 62-2. Alpha "guarantee[d], as primary obligor and not merely as surety, the due and prompt payment by [Metallic] of the Purchase Price" under the August 11, 2015 Purchase Order. *Id*. at ¶ 4(e). Yet another contract, the Transition Services Agreement ("TSA"), required Oracle to provide certain administrative services to Alpha in exchange for a fee. Doc. 44 at p. 13. Alpha and Oracle also entered into a Sublease, under which Alpha sublet from Oracle the

property on which Alpha's facility was located. *Ibid*. Finally, Alpha executed a Secured Subordinated Promissory Note worth $1,000,000 in favor of Oracle as part of the purchase price under the MUPA. *Id*. at pp. 13-14; Doc. 62 at 3. As of January 1, 2017, Alpha owed Oracle nearly $1.4 million for breaches of the PSA, TSA, Sublease, and Note. Doc. 44 at p. 14.

Meanwhile, throughout late 2015 and early 2016, Alpha assigned some of Oracle's purchase orders to Metallic, as the PSA permitted. *Id*. at ¶¶ 25-26. Oracle timely paid some of Metallic's invoices, but it refused to pay fifty invoices totaling $709,146.58 in order to set off the sums owed to it by Alpha. *Id*. at ¶¶ 27-28. Metallic assigned its rights under those invoices to IBT, its secured lender, Doc. 20-1, which then brought this collection suit.

## Discussion

Section 9-404 of the Uniform Commercial Code, which has been adopted by North Carolina and Illinois, provides that "[u]nless an account debtor has made an enforceable agreement not to assert defenses or claims, … the rights of an assignee are subject to … any … defense or claim of the account debtor against the assignor which accrues before the account debtor receives notification of the assignment," and specifies that "the claim of an account debtor against an assignor may be asserted against an assignee … to reduce the amount the account debtor owes." N.C. Gen. Stat. § 25-9-404(a)-(b); 810 ILCS 5/9-404(a)-(b). Oracle's affirmative defense alleges that section 9-404 entitles Oracle (the account debtor) to set off the money that Alpha (the assignor) owes Oracle against the sums that Oracle owes to Metallic (Alpha's assignee) and thus to IBT (Metallic's assignee). Doc. 44 at p. 14.

IBT argues that section 16 of the PSA displaces Oracle's section 9-404 set-off rights and thereby defeats Oracle's set-off defense as a matter of law. Doc. 65 at 5-6. Section 16 states:

> **SET-OFF**. Without prejudice to any other right or remedy any Party (a "Wronged Party") may have, such Wronged Party hereby reserves the right to

3

> set off at any time any amount owing to it by the other Party (the "Breaching Party") under (a) the Transition Services Agreement, dated as of the date hereof, by and between [Oracle] and [Alpha], and (b) the Purchase Order, dated as of the date hereof, by and among [Oracle], [Alpha] and Metallic, against any amount payable hereunder by the Wronged Party to the Breaching Party; provided that the Wronged Party shall deliver written notice to the Breaching Party of the Wronged Party's intent to exercise such right and the Breaching Party shall have three (3) business days after delivery of any such notice to pay the amount owing to the Wronged Party prior to any set off.

Doc. 20-2 at ¶ 16. This provision authorizes Oracle to set off any debts that Alpha owes Oracle under the TSA or the August 11, 2015 Purchase Order, or that Metallic owes Oracle under the August 11, 2015 Purchase Order, against payments that Oracle owes to Metallic or Alpha under the PSA. According to IBT, because the parties contractually established that specific set-off remedy, the *expressio unius est exclusio alterius* canon requires the court to hold that the parties meant to rule out all other set-off remedies. Doc. 65 at 6-7. It follows, IBT argues, that section 16 constitutes "an enforceable agreement [by Oracle] not to assert [certain set-off] defenses," N.C. Gen. Stat. § 25-9-404(a); 810 ILCS 5/9-404(a), thereby waiving whatever set-off rights Oracle otherwise could have asserted, including those under section 9-404.

North Carolina law governs the PSA. Doc. 20-2 at ¶ 32. At the pleading stage, the court may strike Oracle's set-off defense only if IBT's interpretation of section 16 is unambiguously and indisputably correct. *See Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989) ("Affirmative defenses will be stricken only when they are insufficient on the face of the pleadings."); *RME Mgmt., LLC v. Chapel H.O.M. Assocs., LLC*, 795 S.E.2d 641, 645 (N.C. App. 2017) ("When the language of a contract is not ambiguous, no factual issue appears and only a question of law … is presented to the court.") (internal quotation marks omitted). IBT's interpretation of section 16 does not come close to clearing that bar.

Oracle may be held to have contractually waived its section 9-404 right to set off Alpha's debts to Oracle against the sums Oracle owes to Metallic only if Oracle made "an enforceable

4

agreement" to that effect. N.C. Gen. Stat. § 25-9-404(a); 810 ILCS 5/9-404(a). A court can find such an enforceable agreement only if "knowledge of the right and an intent to waive it … plainly [] appear" in the contract. *Ussery v. Branch Banking & Trust Co.*, 777 S.E.2d 272, 279 (N.C. 2015). IBT does not and could not argue that section 16 contains an express waiver of all set-off rights not listed therein. Instead, IBT relies on a theory of implied waiver.

There is a formidable obstacle to finding an implicit waiver, as section 16 begins by stating that it is "[w]ithout prejudice to any other right or remedy any Party … may have." Doc. 20-2 at ¶ 16. IBT attempts to overcome that obstacle by contending that because section 16 is titled "SET-OFF," the phrase "any *other* right or remedy" means "any *non-setoff* right or remedy." Doc. 65 at 7. Thus, according to IBT, section 16's authorization of one specific set-off remedy *was* with prejudice to all other set-off remedies, including those under section 9-404.

The trouble with IBT's contention, at least on the pleadings and without the benefit of a developed record, is that the phrase "any other right or remedy" may plausibly be read to mean *any* right or remedy—including any set-off remedies—other than the particular set-off remedy specified in section 16. *See Norfolk S. Ry. Co. v. Kirby*, 543 U.S. 14, 31 (2004) ("Read naturally, the word 'any' has an expansive meaning, that is, 'one or some indiscriminately of whatever kind.'") (quoting Webster's Third New International Dictionary 97 (1976)) (some internal quotation marks omitted); *Smith v. State Farm Fire & Cas. Co.*, 426 S.E.2d 457, 459-60 (N.C. App. 1993) (holding as a matter of contract interpretation that "any means any") (internal quotation marks omitted). As for IBT's reliance on section 16's being titled "SET-OFF," the PSA states that "[h]eadings used in this Agreement are provided for convenience only and shall not be used to construe meaning or intent," Doc. 20-2 at ¶ 35, which further undermines IBT's submission that section 16 was intended to categorically dispose of any other set-off rights the

5

parties could have asserted under background principles of law such as section 9-404. *See Davis v. Dennis Lilly Co.*, 411 S.E.2d 133, 136 (N.C. 1991). Because section 16 is, at the very least, "fairly and reasonably susceptible" to an interpretation that preserves Oracle's section 9-404 set-off defense, IBT's motion to strike is denied. *RME Mgmt.*, 795 S.E.2d at 645 (internal quotation marks omitted).

IBT objects on the ground that Oracle's interpretation of section 16 renders it superfluous. Doc. 65 at 8. According to IBT, if section 16 does not eliminate other set-off remedies, then nothing was accomplished by its explicitly authorizing a particular set-off arrangement. Even if IBT were right that section 16 accomplished nothing, surely it would be plausible that the parties, whether out of ignorance or caution, chose to explicitly authorize a remedy that the law already provided. As it happens, section 16 does add something of its own—the provision can be understood as a "netting provision" that creates a procedure under which the parties could privately "net offsetting obligations so as to avoid the hassle of making redundant payments." *In re Black Diamond Mining Co.*, 596 F. App'x 477, 478 (6th Cir. 2015) (internal quotation marks omitted). Thus, if Oracle wished to set off money that Alpha or Metallic owed it under the TSA or the August 11, 2015 Purchase Order against payments that it owed Alpha or Metallic under the PSA, Oracle simply had to notify Alpha or Metallic of its intent and give them three days to make the delinquent payments before exercising its set-off right. Because that "netting" procedure is a creature of section 16, the provision does manage to do some work even though it does not preclude all other set-off rights.

Finally, IBT contends that section 2(b) of the PSA supports its interpretation of section 16. Doc. 54 at 5-6. Section 2(b) authorized Alpha to assign purchase orders to Metallic, but provided that "any *claim* by [Oracle] arising out of this Agreement shall be pursued against

6

[Alpha] only." Doc. 20-2 at ¶ 2(b) (emphasis added). According to IBT, section 2(b) evinces an intent to avoid entangling Metallic in disputes between Alpha and Oracle. But, as IBT itself recognizes, Doc. 65 at 11, Oracle raises set-off as a *defense*, not as a *claim*. It follows that section 2(b), which limits Metallic's exposure to affirmative *claims* by Oracle, does not speak to section 16's impact on Oracle's *defense*.

## Conclusion

IBT's motion to strike Oracle's set-off affirmative defense is denied.

March 27, 2018

_____
United States District Judge